THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER GREEN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SECURITY ASSURANCE MANAGEMENT, et al.,**<br><br>**Defendants.** | Case No.: 22-cv-01936-CRC<br>Judge Christopher R. Cooper<br><br>Jury Trial Demanded |

## SECOND AMENDED COMPLAINT

1. Plaintiff Peter Green ("Plaintiff") brings this action against Security Assurance Management, Inc.; its employees Doneka Butler, Brittani Wilkins, Benedette Ezimorah, Jaymar Payne, Ionia Butler, Carol Chase-Judge, and Lindsay Vernon; and Ashan Benedict, Interim Chief of the Washington, DC, Metropolitan Police Department ("Metro Police") in his official capacity for deprivation of his rights under the First and Fourth Amendments to the United States Constitution, and under 42 U.S.C. § 1983, as well as for pendent claims arising under the laws of the District of Columbia.

## SUMMARY OF THE CLAIMS

2. Defendants violated Mr. Green's constitutional rights under the First and Fourth Amendment, and committed false arrest under the laws of the District of Columbia, when they enforced an illegal prohibition on recording public officials engaged in their duties in public places by handcuffing him, confiscating his phone, and deleting the recording he had made of his interactions with a public official.

**PARTIES**

3. Plaintiff resides at 3501 B Street S.E., Washington, D.C., 20019.

4. Upon information and belief, Defendant Security Assurance Management is incorporated under the laws of Washington, D.C., with headquarters located at 910 17th Street, N.W., Washington, D.C., 20006.

5. Defendant Doneka Butler is an employee of Security Assurance Management. Upon information and belief, Defendant Butler is commissioned as a Special Police Officer ("SPO") pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Butler's residence at this time.[1]

6. Defendant Brittani Wilkins is an employee of Security Assurance Management. Upon information and belief, Defendant Wilkins is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Wilkins's residence at this time.

7. Defendant Benedette Ezimorah is an employee of Security Assurance Management. Upon information and belief, Defendant Ezimorah is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Ezimorah's residence at this time.

8. Defendant Jaymar Payne is an employee of Security Assurance Management. Upon information and belief, Defendant Payne is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Payne's residence at this time.

---

[1] Mr. Green continues to investigate the residential addresses of Defendants listed in Paragraphs 4 through 11, and, should the Court so wish, will seek leave to amend the Complaint to add that information. However, the Defendants listed in Paragraphs 4 through 10 were previously served with process. *See* Dkt. 8 (Process Receipt & Return).

9. Defendant Ionia Butler is an employee of Security Assurance Management. Upon information and belief, Defendant Ionia Butler is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Ionia Butler's residence at this time.

10. Defendant Carol Chase-Judge is an employee of Security Assurance Management. Upon information and belief, Defendant Chase-Judge is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Chase-Judge's residence at this time.

11. Defendant Lindsay Vernon is an employee of Security Assurance Management. Upon information and belief, Defendant Vernon is commissioned as an SPO pursuant to D.C. Code § 5-129.02. Plaintiff is unaware of Defendant Vernon's residence at this time.

12. Defendant Ashan Benedict was at all relevant times Interim Chief of the Washington, DC, Metropolitan Police Department and is being sued in his official capacity. In this capacity, he is responsible for the actions of Defendants commissioned as SPOs. Upon information and belief, Defendant Benedict is a resident of Washington, D.C.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because this action presents federal questions and seeks redress for the deprivation of rights under the First and Fourth Amendment of the United States Constitution, and for the deprivation of rights under 28 U.S.C. § 1983. This Court has supplemental jurisdiction over pendent claims arising under the laws of the District of Columbia under 28 U.S.C. § 1367.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because, upon information and belief, all defendants reside in this District, and § 1391(b)(2) because all of the events giving rise to the claims took place in the District of Columbia.

**FACTUAL BACKGROUND**

15. On June 24, 2022, Peter Green visited the District of Columbia's Department of Human Services ("DHS") offices at 645 H Street N.E., Washington, D.C. [insert zip] to apply for Medicaid and supplemental nutrition assistance program ("SNAP") benefits.

16. Concerned that miscommunications might cause errors delaying his benefits, Mr. Green decided to record his interactions at DHS.

17. After waiting ten or fifteen minutes for his number to be called, Mr. Green approached the DHS service counter to begin his application.

18. Mr. Green began recording his interaction with the DHS representative.

19. The representative warned Mr. Green that recording in the DHS office was prohibited, and pointed to a sign that repeated the representative's warning.

20. Mr. Green responded that it was his right under the First Amendment to the United States Constitution to record interactions with public officials engaged in official conduct so long as he was not being disruptive or filming in private spaces.

21. Mr. Green continued filming.

22. While Mr. Green completed his benefits application, Defendants Doneka Butler, Paige, Wilkins, Ezimorah, Payne, Ionia Butler, Chase-Judge, and Vernon ("SPO Defendants") surrounded him.

23. Certain of the SPO Defendants repeated the warning that recording was prohibited in the DHS office. While Mr. Green could not discern which SPO Defendants issued this warning, none of the SPO Defendants intervened on his behalf or contradicted their colleagues' misrepresentation of the law.

24. Mr. Green again responded that it was his First Amendment right to do so.

25. After just a few minutes, Mr. Green completed his benefits application.

26. All of the SPO Defendants then began to usher Mr. Green out of the DHS office.

27. While doing so, certain of the SPO Defendants taunted Mr. Green, calling him names and insulting his intelligence.

28. Mr. Green was unable to distinguish which SPO Defendants taunted and insulted him, but none of the SPO Defendants intervened on his behalf or discouraged the other SPO Defendants' conduct.

29. Mr. Green asked the SPO Defendants for their supervisor's name so that he could file a complaint about his treatment.

30. Mr. Green was instructed to turn around and place his hands behind his back by certain of the SPO Defendants.

31. Mr. Green was unable to distinguish which SPO Defendants instructed him to turn around and place his hands behind his back, but none of the SPO Defendants intervened on his behalf or discouraged the other SPO Defendants' conduct.

32. Mr. Green was placed in handcuffs, though, because his back was turned, he could not discern which of the SPO Defendants restrained him.

33. While his back was turned, Mr. Green heard the SPO Defendants discussing confiscating his phone and deleting the video Mr. Green recorded of his interactions at the DHS office. Because his back was turned, Mr. Green could not discern which SPO Defendants participated in this discussion, but none of the SPO Defendants dissented from the discussion.

34. Mr. Green's phone, which was not password protected, was removed from his pocket by an SPO Defendant Because his back was still turned, Mr. Green could not discern

which of the SPO Defendants removed his phone, but none of the SPO Defendants intervened on his behalf or discouraged the other SPO Defendants' conduct.

35. Mr. Green asked the SPO Defendants for his phone to be returned and told them that the handcuffs were too tight around his wrists.

36. After approximately 10 minutes, Mr. Green's phone was returned to him wrapped in a blue examination glove.

37. Metro Police officers arrived at the DHS office and, after conferring with the SPO Defendants, Mr. Green was released from handcuffs.

38. Mr. Green accessed his phone and discovered that his video recording had been deleted.

39. Mr. Green filed a police report with the Metro Police.

40. Metro Police officers returned with Mr. Green to the DHS office the following day.

41. The Metro Police officers conferred with the SPOs then on duty and informed them that, despite the posted sign forbidding recording in the DHS office, Mr. Green was within his rights to record his interactions with the DHS representative.

## CLAIMS FOR RELIEF

### Claim I: Violation of First Amendment Right to Freedom of Speech

42. The SPO Defendants deprived Mr. Green of his right to freedom of speech under the First Amendment to the United States Constitution.

43. The First Amendment generally protects recording government officials engaged in their duties in a public place, subject to reasonable regulations of the time, place, or manner of

the protected activity, and so long as the recording does not interfere with the performance of official duties.

44. Blanket prohibitions against recording public officials engaged in their duties in a public place are unreasonable.

45. Enforcement of such prohibitions is therefore also unreasonable.

46. The SPO Defendants' deprivation of Mr. Green's rights was not a reasonable regulation of the time, place, or manner of Mr. Green's First Amendment-protected activity.

47. Upon information and belief, Defendant Security Assurance Management had a policy, practice, or custom of depriving citizens of their constitutional rights as evidenced by the enforcement of an illegal rule prohibiting the recording of public officials engaged in official conduct in public spaces.

48. Defendant Security Assurance Management is vicariously liable under a theory of *respondeat superior* for the actions of the SPO Defendants, who were acting within the scope of their employment with, and for the benefit of, Security Assurance Management when they deprived Mr. Green of his First Amendment rights.

49. In depriving Mr. Green of his right under the First Amendment, the SPO Defendants acted under the color of state law when they exercised the arrest powers conferred upon them under D.C. Code § 5-129.02 and D.C. Code § 23-582.

50. Defendant Benedict is liable for the conduct of SPO Defendants under 42 U.S.C. § 1983 because the SPO Defendants acted under the color of state law by enforcing a policy unreasonably prohibiting Mr. Green from recording his interactions at the DHS office, thereby depriving him of his First Amendment rights.

51. All Defendants are jointly and severally liable to Mr. Green for the violation of his First Amendment rights, and all Defendants acted with reckless or callous indifference to Mr. Green's federally protected rights and therefore are liable for punitive damages.

### Claim 2: Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure

52. The SPO Defendants deprived Mr. Green of his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

53. The SPO Defendants unlawfully detained Mr. Green without a warrant or probable cause when they exercised the arrest powers conferred upon them under D.C. Code § 5-129.02 and D.C. Code § 23-582 by placing Mr. Green in handcuffs and preventing him from leaving the DHS office.

54. During this detainment, the SPO Defendants unlawfully searched Mr. Green when they removed his cell phone from his possession, accessed the cell phone's data, and deleted Mr. Green's recording of his interactions with the DHS representative.

55. Upon information and belief, Defendant Security Assurance Management had a policy, practice, or custom of depriving citizens of their constitutional rights as evidenced by the enforcement of an illegal rule prohibiting the recording of public officials engaged in official conduct in public spaces.

56. Defendant Security Assurance Management is vicariously liable under a theory of *respondeat superior* for the actions of the SPO Defendants, who were acting within the scope of their employment with, and for the benefit of, Security Assurance Management when they deprived Mr. Green of his Fourth Amendment rights by unreasonably searching and seizing him.

57.    In depriving Mr. Green of his rights under the Fourth Amendment, the SPO Defendants acted under the color of state law when they exercised the arrest powers conferred upon them under D.C. Code § 5-129.02 and D.C. Code § 23-582.

58.    Defendant Benedict is liable for the conduct of SPO Defendants under 42 U.S.C. § 1983 because the SPO Defendants acted under the color of state law by arresting him for an alleged violation of a policy unreasonably prohibiting recording at the DHS office, thereby depriving him of his Fourth Amendment rights.

59.    All Defendants are jointly and severally liable to Mr. Green for the violation of his Fourth Amendment rights, and all Defendants acted with reckless or callous indifference to Mr. Green's federally protected rights and therefore are liable for punitive damages.

**Claim 3: Common-Law False Arrest**

60.    An action for common-law false arrest is identical to an action for unreasonable seizure under the Fifth Amendment.

61.    For the reasons set forth in support of Claim 2, the SPO Defendants and Security Assurance Management are therefore also liable to Mr. Green for the common-law tort of false arrest.

**Jury Trial Demanded**

62.    Pursuant to Federal Rule of Civil Procedure 38 and the United States Constitution, Mr. Green demands a trial by jury.

**RELIEF REQUESTED**

63.    Issue a judgment declaring that Defendants' actions described herein violate the Fist Amendment, the Fourth Amendment, and 42 U.S.C. § 1983.

64. Issue an injunction ordering the Defendants to cease engaging in the unlawful acts described herein.

65. Issue an injunction ordering Defendant Security Assurance Management to institute training sufficient to inform its employees of the rules pertaining to the legality of filming public officials conducting their duties in public spaces and to monitor its employees to ensure those rules are followed.

66. Issue an injunction ordering Defendant Benedict to see that SPOs commissioned pursuant to D.C. Code § 5-129.02 have received training substantially similar to the training described in Paragraph 61 and to monitor the conduct of SPOs to ensure the rules pertaining to the legality of filming public officials conducting their duties in public spaces are followed.

67. Award compensatory and punitive damages to Mr. Green according to proof at trial, including damages for pain and suffering.

68. Award costs of suit and attorney's fees.

69. Provide such other relief as the Court may deem just, proper, and appropriate.

Dated: June 22, 2023

Respectfully submitted,

*/s/ Ross P. McSweeney*
Ross P. McSweeney, DC Bar No. 1018648
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6625
Fax: (202) 659-4503
Email: rmcsweeney@groom.com

*Counsel for Plaintiff Peter Green*