# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER GREEN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SECURITY ASSURANCE MANAGEMENT**, *et al.*,<br><br>**Defendants.** | **Civil Action No. 1:22-cv-01936-CRC** |

## PLAINTIFF PETER GREEN'S OPPOSITION TO DEFENDANT CHIEF OF POLICE PAMELA SMITH'S MOTION TO DISMISS

## PRELIMINARY STATEMENT

Defendant Pamela Smith, Chief of the Metropolitan Police, does not dispute any of the central facts of this case. Special Police Officers ("SPOs")—commissioned by the government of the District of Columbia ("the District"), empowered by that commission to arrest private citizens, contracted by the District to protect District property, and supervised by the District's Chief of Metropolitan Police in the performance of those duties—falsely arrested Plaintiff Peter Green while he was exercising his clearly established constitutional right to record his interactions with public officials conducting public business on public property.

Instead, Defendant Smith principally argues in support of her Motion to Dismiss Plaintiff Peter Green's Second Amended Complaint (Dkt. 25-1) that Mr. Green (1) lacks standing under Article III of the Constitution because he has not alleged that Defendant Smith is causally linked to any of his injuries and that Mr. Green's claims against Defendant Smith are not redressable; (2) Mr. Green has failed to sufficiently plead his allegations against Smith, and (3) that Mr. Green has failed to plead a claim for injunctive relief.

In order to evade liability, Smith misstates the law and mischaracterizes the facts underpinning Mr. Green's claims. According to Defendant Smith, SPOs commissioned by the District, invested with police powers by the District, trained by the District, and tasked by the District to protect District property nevertheless operate entirely outside the District's (and thus, as Chief of Metropolitan Police, Smith's) supervision and control. Drawing on inapt caselaw, Smith likens the SPOs who falsely arrested Green while he was interacting with public officials on public property to no more than mall cops monitoring a convenience store. The Metro Special Police Department—the law enforcement agency authorized by District law to provide protective services within the District—disagrees, touting its close "working professional relationship with local municipal . . . law enforcement agencies" and the "mandated training in accordance with District of Columbia law" its officers receive.[1] And the statutory scheme regulating SPOs makes clear that they operate within the Chief of Metropolitan Police's supervision by requiring the Chief to approve any SPOs commission before investing the officer with full police powers, assigning the Chief the duty to supervise and assist the SPOs in the exercise of those powers.

In sum, Defendant SPOs were commissioned and hired by the District, approved by the Chief of Metropolitan Police, tasked with protecting District interests, and given power to arrest citizens. Defendant SPOs then enforced blatantly unconstitutional policies pursuant to District laws—as evidenced by the posted sign—that the Chief of Metropolitan Police is responsible for enforcing. Defendant Smith cannot sidestep liability now that Mr. Green has been injured by Defendant SPOs' unconstitutional use of the police powers vested in them.

## ARGUMENT

---

[1] Metro Special Police Department, online at https://metrospd.org/ (visited Sept. 1, 2023).

I.  **Plaintiff Has Sufficiently Pleaded Allegations Against Chief Smith to Satisfy Article III Standing.**

Plaintiff has standing to sue Defendant Smith under Article III of the Constitution, which requires that (1) Plaintiff "must have suffered an 'injury in fact'[,]" (2) the injury is "fairly traceable" to the Defendant, and (3) "the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 43 (1976); *see also NB ex rel. Peacock v. D.C.*, 682 F.3d 77, 82 (D.C. Cir. 2012) (holding that at the pleadings stage, "'the burden imposed' on plaintiffs to establish standing 'is not onerous' […] 'general factual allegations of injury resulting from the defendant's conduct may suffice.'"). Defendant Smith does not dispute that Green has suffered an "injury in fact," but instead argues that Green has not created a causal nexus between that injury and Defendant Smith's conduct. Defendant Smith further argues that this Court cannot redress the injury Green indisputably suffered. Defendant Smith is wrong on both counts.

A. **Plaintiff has sufficiently alleged the causal nexus between Defendant Smith, the SPOs, and Plaintiff's injury.**

Defendant Smith contends that "[n]o fact connects Plaintiff's alleged injuries to any action taken by the Chief of Police." *See* Dkt. 25-1 at 7. Yet, in the very next sentence she points out the facts Plaintiff *has* alleged, which are sufficient to allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Specifically, Plaintiff alleged that (i) Defendant Smith is the Chief of Metropolitan Police, and (ii) in her official capacity, bears responsibility for the commissioned SPO Defendants. *See* Dkt 25-1 at 7, citing Dkt. 18 (Second Amended Complaint, or "SAC") ¶¶ 12, 50, 58. The nexus is clear from the allegations. The Chief of Metropolitan police oversees the enforcement and execution of "police power and function," and Defendant SPOs are granted those police powers by virtue of their commission as Special Police Officers under D.C. Law. *See* D.C. Mun. Regs. tit.

3

6-A, § 800.2; *see also* D.C. Code § 23–582(a). Simply put, the allegations in the Second Amended Complaint create a reasonable inference that the SPO's conduct in enforcing an unconstitutional policy is fairly traceable to the Chief of the Metropolitan Police, who is responsible for supervising the conduct of officers commissioned to enforce the District's laws.

Defendant dismisses Plaintiff's allegations as "conclusory statements" merely because they are concise, but a "short and plain" statement is sufficient. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain […] a short and plain statement of the claim showing that the pleader is entitled to relief[.]"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (noting that "[d]etailed factual allegations" are not required, just as long as the "factual matter," when "accept[ed] as true," states "a claim to relief that is plausible on its face[.]").

These "short and plain statement[s]" are sufficient because Mr. Green's burden under Article III is not a demanding one. Article III does not require a showing that Defendant Smith is the "most immediate cause, or even a proximate cause" of Plaintiff's injuries. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017). Rather, Plaintiff only needs to allege that the injury is "fairly traceable" to Defendant Smith. *See id*. While the Defendant SPOs may be directly responsible for Mr. Green's injury, that injury still can be fairly traced to Defendant Smith's failure to properly supervise the conduct of officers regulated by her police department and commissioned by the District to protect District property with arrest powers.

Defendant suggests there is a categorical rule that the Chief of Metropolitan Police cannot be responsible for the conduct of SPOs, severing any causal connection between the injury SPOs caused Mr. Green and Defendant Smith. *See* Dkt. 25-1 at 8. That is not what the law says. In *Moorehead v. D.C.*, an SPO assigned to provide security to a Rite-Aid convenience store assaulted

a customer he suspected of shoplifting. 747 A.2d 138, 141 (D.C. 2000). The customer sued the SPO and the District, alleging under a theory of *respondeat superior* that the District was responsible for the SPOs' actions. The court held that no master-servant relationship supporting *respondeat superior* liability existed between the District and the SPO in part because it was "Rite-Aid [that] applied for [the SPO's] appointment as a special police officer to protect its stores, and his commission was specifically limited to Rite-Aid property." *Id*. at 144.

Defendant Smith seems to conflate agency and respondeat superior in *Moorehead* with the theory of liability that Mr. Green is alleging. Mr. Green does not need to prove or even allege agency because Mr. Green is not suing Defendant Smith under a theory of respondeat superior, which is inapplicable to Section 1983 claims. *Id.* at 148; *see also Harbeck v. Smith*, 814 F. Supp. 2d 608, 626 (E.D. Va. 2011) ("*[R]espondeat superior* has no applicability to § 1983 claims.").

Further, even if Mr. Green did allege liability under an agency theory, he would satisfy the requirements of respondeat superior through the very same authorities that Defendant Smith cites. In fact, *Moorehead* actually supports a causal link under agency for Mr. Green—the same link that Defendant disputes. *Moorehead*, 747 A.2d at 143 (observing that "there may be cases in which the particular facts show that a special police officer is an agent of the District"). Those facts are present here: unlike in *Moorehead*, Defendant SPOs who harmed Mr. Green were securing public property, not a commercial establishment. They were protecting the District's interests in maintaining the peace, not the interests of a private employer in safeguarding its inventory. They were exercising the arrest power vested in them by virtue of their commission by the District, not assaulting a private citizen. Not only are these facts enough to allege respondeat superior lability, they are—as the court in *Moorehead* observed—sufficient to conclude Mr.

5

Green's actual claim for liability that "that a special police officer could be held liable under 42 U.S.C. § 1983 (1988) for civil rights violations." *Id*. at 146.

The law further supports Mr. Green's position that Defendant SPOs not only acted under the color of law, but by doing so also subjected Defendant Smith to liability. In *Woodward & Lothrop v. Hillary*, the court held that "in subduing, arresting and detaining" a suspected trespasser, SPOs "acted under color of state law" for the purposes of Section 1983 because they "were exercising authority conferred on them by their commission as special police officers." 598 A.2d 1142, 1143–44 (D.C. 1991). While noting that "the mere fact a commissioned special police officer does the allegedly unconstitutional act does not itself denote official action," *id*. at 1145, the court held that "the required nexus with the state is furnished . . . by the convergence of the authority bestowed by the commission and the officers' actions." *Id*. at 1145-46. That nexus is present here: the SPO Defendants exercised the authority bestowed upon them by the District and supervised by Defendant Smith in service of their duty to protect District property

Thus, although not all of an SPO's actions are automatically attributable to the District, an SPO is a "a state or 'public' actor when he or she invokes state authority through manner, word or deed, *i.e.*, he or she acts like a regular police officer." *See Limpuangthip v. United States*, 932 A.2d 1137, 1144 (D.C. 2007). One hallmark of "act[ing] like a regular police officer" is arresting private citizens for purportedly violating District policies. And, unlike in *Moorehead*, that power was exercised by an SPO employed or authorized by the District to protect the property or interests of the District. *See* D.C. Mun. Regs. tit. 6-A, § 1101.12-13.

The Metro Special Police Department itself confirms this relationship on its own website, which states:

> "MSPD officers are regulated by the District of Columbia's Metropolitan Police Department (DCMPD) to ensure compliance with applicable laws pertaining to special police, and to address any citizen complaints involving special police. Our officers receive mandated training in accordance with District of Columbia law, yearly in-service training, and continuing education. This regulatory oversight by DCMPD for our officers, coupled with yearly in-service training and continuing education, ensures that we are maintaining the highest level of professional police services to the citizens of the District of Columbia, and remaining a positive asset to the Mayor and DCMPD in reducing crime." Metro Special Police Department, online at https://metrospd.org/ (visited Sept. 1, 2023).

While it is the Mayor who appoints SPOs, the Chief of Metropolitan Police must *approve* any SPO. *See* D.C. Code § 47-2853.208(b)(2) ("[N]o person shall act as a campus police officer, private detective, or **special police officer** in the District of Columbia without first obtaining: [a]pproval from the Chief of Police.") (emphasis added); D.C. Mun. Regs. tit. 6-A, § 1100.7(d) ("No person shall be appointed as a special police officer […] unless he or she […] [is] approved for appointment by the Chief of Police."). SPOs must also "be amenable to the rules laid down for the government of the Metropolitan Police Force," D.C. Mun. Regs. tit. 6-A, § 1100.6, which the Chief of Police oversees the administration, supervision, and execution of. *See* D.C. Mun. Regs. tit. 6-A, § 800.1. Additionally, the Chief of Police is responsible for the "enforcement," "advise[ment]," and "assist[ance]" of "police function and power," *see* D.C. Mun. Regs. tit. 6-A, § 800.2; *id.* at § 800.17, which are vested in SPOs by virtue of their statutory commission. *See Limpuangthip*, 932 A.2d at 1142 ("[SPOs are granted] the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends[.]"); D.C. Code § 23–582(a); *see also* D.C. Mun. Regs. tit. 6-A, § 1101.7 ("The property which any special police officer shall be appointed to protect […] shall be located within the geographical limits of one police district.").

SPOs are thus subject to the control and authority of the Chief of Police when they exercise police power within the District in the course of executing their commissioned duties. Mr. Green's

7

allegation that Defendant Smith is a responsible supervisor of the SPOs is sufficient to show a causal connection under Article III.

**B.      Mr. Green's injury can be redressed by this Court.**

Defendant Smith contends that Mr. Green's injury cannot be redressed by her because officials sued in their official capacity cannot be personally liable for damages, Dkt. 25-1 at 10, and because any injunctive relief would run against the SPO Defendants and their employer. *Id*. at 11. But, as shown above, Mr. Green has sufficiently alleged that Defendant Smith's supervisory and administrative duties of "police powers and function" within the District make her a proper defendant of his Section 1983 claims. It is in this capacity that Mr. Green has requested injunctive relief against Defendant Smith compelling her "to see that SPOs commissioned pursuant to D.C. Code § 5-129.02 have received training . . . to ensure the rules pertaining to the legality of filming public officials conducting their duties in public spaces are followed." SAC ¶ 66. Such injunctive relief will redress Mr. Green's injury by eliminating the SPOs' adherence to an unconstitutional policy prohibiting filming in public places and reducing Mr. Green's risk of suffering future harm because of the SPOs' abuse of their police powers.

**II.     Mr. Green Has Sufficiently Pleaded A Section 1983 Claim Against Defendant Smith.**

Defendant Smith's argument that Mr. Green has not sufficiently pleaded a Section 1983 claim against her fails for the same reason that her argument that he lacks Article III standing does: Mr. Green has sufficiently alleged that, as Chief of the Metropolitan Police, Defendant Smith has supervisory responsibility for SPO Defendants' exercise of the police powers statutorily vested in them. When, accepted as true, Mr. Green's factual allegations validly state a claim for relief that is "plausible on its face[.]" *See Twombly*, 550 U.S. at 555, 570; *see also See* Fed. R. Civ. P. 8(a)(2)**.**

Municipalities can be held liable for constitutional violations committed by their employees or agents if those violations "are so consistent that they have become [a] 'custom'" of the municipality of which the supervising policymaker—that is, Defendant Smith—must have been aware. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Here, the SPO Defendants' violation was unlawfully arresting Mr. Green as part of the enforcement of an unconstitutional prohibition on filming public official conducting their official duties in a public place. That violation was so "consistent" to have become a "custom," as evidenced by the fact that the unconstitutional prohibition that the SPO Defendants unlawfully enforced was posted on a sign.

### III. Mr. Green Has Sufficiently Stated A Claim For Injunctive Relief.

The injunctive relief Mr. Green seeks against Defendant Smith would protect him from becoming a repeat victim of unconstitutional policing practices. As alleged in Mr. Green's complaint, Defendant Smith is the Chief of Metropolitan Police, and therefore has supervisory responsibilities over Defendant SPOs. *See* SAC at ¶ 12. There is evidence that the constitutional harm is still imminent, in that the SPO Defendants may still be exercising their power of arrest to unlawfully enforce an unconstitutional prohibition, as announced on a posted sign, against filming public officials conducting their duties in a public place. *See id.* at ¶¶ 19, 41. Thus, it is not unreasonable to believe that everyone who walks into that office still faces a very real threat of injury, including Mr. Green.

In fact, Mr. Green is a resident of the District and has once already been the victim of this harm. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (noting that although a past injury is not itself dispositive of the likelihood the same harm will occur, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.") Further, Mr. Green was in that

office to restart his benefits. Instead of finding a resolution, Mr. Green was injured. It is reasonable to assume that Mr. Green will be back to visit the same building to attempt to, once again, resolve any issues he has with receiving his benefits—thus subjecting him to the same potential of injury he faced before.

Additionally, Mr. Green's injury came as the result of him filming his interaction in the building—an action that he was Constitutionally allowed to do. *See id.* at 496–97 (showing that harm is not imminent if, when a plaintiff acts "within the law," they would not be subject to the same harm or prosecution.). In exercising his Constitutional rights, Mr. Green did nothing that would otherwise warrant the actions of Defendant SPOs. He was lawfully recording his interaction so that he could address any further miscommunications that would delay his benefits. Therefore, it is also reasonable to assume that if Mr. Green returns to that office, he will likely record again for the same reasons, and thus be at risk of facing the same or similar harm as before.

The facts above, especially that the SPOs still have a policy of enforcing an unconstitutional prohibition, as evidenced by the posted sign, are sufficient to conclude that the risk of harm to Mr. Green is more than just speculative—it is plausibly imminent. *See Rowe v. PChange Protective Servs., LLC*, 2023 WL 2598683, *3 (D.D.C. Mar. 22, 2023) (holding that an injury can be perceived as imminent by "(1) 'demonstrat[ing] [the] existence' of a challenged policy or practice; and (2) establish[ing] that he is 'likely to be subjected to the policy again.'") Therefore, Mr. Green has sufficiently alleged a claim for injunctive relief.

## **CONCLUSION**

It is for all these reasons, Defendant Smith's Motion to Dismiss should be denied.

Dated:  September 1, 2023	Respectfully Submitted,

*/s/ Ross P. McSweeney*
Ross P. McSweeney
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave NW
Washington, DC 20006
(202) 862-6625
rmcsweeney@groom.com

*Counsel for Plaintiff Peter Green*