**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PETER GREEN**, | |
| Plaintiff, | |
| v. | Case No. 22-cv-01936 (CRC) |
| **SECURITY ASSURANCE MANAGEMENT**, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

Following an altercation at a city benefits office, Plaintiff Peter Green sued several Special Police Officers ("SPOs") and their employer for alleged violations of his First and Fourth Amendment rights.  Green then amended his complaint to add the District of Columbia Metropolitan Police Department ("MPD") Chief of Police as a defendant.  The Police Chief now moves to dismiss for lack of standing and failure to state a claim.  Finding that Green has failed to allege a causal nexus between the alleged violation of his constitutional rights and any conduct by the Police Chief, the Court grants the chief's motion to dismiss.

## I.    Background

The Court draws the following background from Green's Second Amended Complaint ("SAC").  Green visited a D.C. Department of Human Services ("DHS") service center in June 2022 to apply for Medicaid and supplemental nutrition assistance program benefits.  SAC ¶ 15. Concerned that miscommunications with DHS staff would delay his receipt of benefits, Green decided to film his interactions at the office.  Id. ¶ 16.  A DHS staffer informed Green that recording in the office was prohibited and pointed to a sign with a warning to the same effect. Id. ¶ 19.  Green continued filming, however.  Id. ¶ 21.

As Green completed his benefits applications, a group of SPOs, employed by private security company Security Assurance Management ("SAM"), surrounded him.  Id. ¶¶ 4–11, 22.[1] Certain of the SPOs repeated the warning that recording was prohibited in the DHS office, and, once he completed his applications, the SPOs ushered him out of the office and "taunted" him, "calling him names and insulting his intelligence."  Id. ¶¶ 23, 26–27.  The SPOs then placed Green in handcuffs, removed his phone from his pocket, and returned it ten minutes later with his recording of his time at the service center deleted.  Id. ¶¶ 30–36, 38.  Shortly later, MPD officers arrived at the DHS office and conferred with the SPOs.  Id. ¶ 37.  Green was then "released from handcuffs."  Id.  The next day, Green returned to the DHS office with MPD officers who purportedly informed the SPOs that, "despite the posted sign forbidding recording," Green "was within his rights to record his interactions with the DHS representative."  Id. ¶ 41.

Green sued the individual SPOs and their employer SAM, alleging violations of his First and Fourth Amendment rights.  See Compl., First Amended Compl.  He then amended his complaint to include the MPD Chief of Police as a defendant.  SAC ¶ 12.  The Police Chief moved to dismiss on the grounds that Green lacks standing to sue the chief and has failed to allege facts to establish municipal liability.  Mot. Dismiss at 2.

## II.   Legal Standard

Standing is a fundamental prerequisite to federal jurisdiction under Article III.  Spokeo, Inc. v. Robins, 578 U.S. 330, 337–38 (2016).  The "irreducible constitutional minimum" for

---

[1] SPOs are private police officers appointed by the mayor and employed by private corporations.  See D.C. CODE § 5-129.02(a) ("The Mayor . . . may appoint special police officers . . . provided [] that the special police officers . . . [are] paid wholly by the corporation or person on whose account their appointments are made.").

standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. at 338 (cleaned up).  The first element—injury in fact—requires that the plaintiff "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 339 (cleaned up).  The second element—causation—necessitates a "causal connection between the injury and the conduct complained of." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  The final requirement—redressability—means that "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (cleaned up).

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Spokeo, 578 U.S. at 338 (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).  The Court will "accept the well-pleaded factual allegations" in the complaint "as true and draw all reasonable inferences from those allegations in the plaintiff's favor." Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015).  The Court will not, however, "assume the truth of legal conclusions" nor will it "accept inferences that are unsupported by the facts set out in the complaint." Id. (cleaned up).

III.  **Analysis**

Green's effort to demonstrate standing falters at the causation step so the Court will direct its attention there.  "To establish causation, the plaintiff must allege facts sufficient to show that the alleged injury was caused, directly or indirectly, by the defendant's conduct." Jangjoo v. Broad. Bd. of Governors, 244 F. Supp. 3d 160, 174 (D.D.C. 2017); see also Attias v. CareFirst, Inc., 865 F.3d 620, 625 (D.C. Cir. 2017) (Plaintiff's injury must be "fairly traceable to the

defendant's actions." (cleaned up)).  Green, however, has alleged no facts demonstrating that the injury he suffered—the deprivation of his rights as a result of the SPOs' conduct—was caused, directly or indirectly, by the Police Chief.

Let's start with what Green has alleged.  He claims that the Chief of Police "is responsible for the actions of Defendants commissioned as SPOs" and that the SPO Defendants "acted under the color of state law."  SAC ¶¶ 12, 50, 58.  Neither of these claims clears the hurdle of demonstrating standing.  The contention that the Chief of Police is "responsible" for the SPOs' conduct—without more—is a "conclusory statement[] and legal conclusion[] [] insufficient to state a plausible basis for standing."  Williams v. Lew, 819 F.3d 466, 472 (D.C. Cir. 2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements . . ., supported by mere conclusory statements, do not suffice.").  And the allegation that the SPOs "acted under color of state law" does not establish any connection between the SPOs' alleged misconduct and the Chief of Police.  See Moorehead v. District of Columbia, 747 A.2d 138, 146 (D.C. 2000) ("[T]he mere fact that a special police officer is acting 'under color of state law' when he arrests a suspect does not mean that he is acting under the *control* of a state or local government . . . .").

D.C. law does not supply the causal link that the complaint lacks.  To be sure, under D.C. regulations, the Police Chief approves SPO appointments, D.C. Mun. Regs. tit. 6-A, §§ 1100.7, 1100.7(d) ("No person shall be appointed as a special police officer . . . unless he or she . . . shall be approved for appointment by the Chief of Police. . . ."); establishes rules that SPOs must abide by, id. § 1100.6 ("Special police officers . . . shall be amenable to the rules laid down for the government of the Metropolitan Police Force . . . ."); id § 800.3 ("The Chief of Police shall promulgate all orders, rules and regulations . . . which pertain to the work of the [MPD] . . . .");

4

and advises the mayor on "matters relating to police service, responsibility and operation," id. §

800.17.[2]  But the plaintiff has not alleged that the appointment of the individual SPOs, the rules

governing their conduct, or the advice the chief gave to the mayor caused his injury.[3]  Standing's

causation element requires a "causal connection between the injury and *the conduct complained*

*of.*"  Lujan, 504 U.S. at 560 (emphasis added).  A causal connection between the injury and

unchallenged conduct does not suffice.  Moreover, Green has not alleged any facts that would

support an inference that the chief negligently appointed SPOs or was at fault in issuing rules or

advising the mayor about police functions.  See Arpaio, 797 F.3d at 19 (The Court "draw[s] all

reasonable inferences from the [well-pleaded factual] allegations in the plaintiff's favor . . . [but]

do[es] not accept inferences that are unsupported by the facts set out in the complaint" (cleaned

up)).[4]

---

[2]  Green also claims that the Police Chief "is responsible for the 'enforcement' . . . of 'police function and power' . . . which are vested in SPOs by virtue of their statutory commission."  Opp'n at 7 (citing D.C. Mun. Regs. tit. 6-A, § 800.2).  But he reads the D.C. regulation too broadly.  Section 800.2 provides that the Chief of Police "shall take any measures that will insure prompt and vigorous enforcement of all criminal statutes, laws, regulations, and ordinances, the enforcement of which come properly within the scope of the police function and power."  D.C. Mun. Regs. tit. 6-A, § 800.2.  This section authorizes the chief to enforce laws *within* the scope of police function and power; it does not give the chief responsibility for any enforcement of police function and power in D.C.

[3]  In his opposition, Green asserts for the first time that the Police Chief "fail[ed] to properly supervise" the SPOs.  See Opp'n at 4.  "[I]t is axiomatic," however, "that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  McManus v. Dist. of Columbia, 530 F.Supp.2d 46, 74 n.25 (D.D.C. 2007) (cleaned up).

[4]  Green alleges that the "SPO Defendants acted under color of state law by enforcing a policy unreasonably prohibiting [] recording [] interactions at the DHS office" and "by arresting him for an alleged violation of" that policy.  SAC ¶¶ 50, 58.  He does not allege, however, that the Police Chief or the MPD issued the alleged no-recording policy.  Instead, the reasonable inferences to be drawn from the complaint are that MPD officers believed the alleged policy to be unlawful and took steps to correct the SPOs' understanding.  See id. ¶ 41 (recounting that MPD officers informed the SPOs that the alleged no-recording policy violated Green's "rights to

As a final note, even if the Court has incorrectly determined that Green lacks standing to sue the Chief of Police, he has nevertheless failed to state a claim against the chief under Federal Rule of Civil Procedure 12(b)(6).  Under Monell v. Department of Social Services, municipalities are liable for employees' or agents' constitutional torts only if they act pursuant to an official "policy or custom."  436 U.S. 658, 694 (1978).  Even where a municipality does not adopt an express policy, a plaintiff can establish Monell liability by showing that "the employees' unconstitutional actions are so consistent that they have become a custom of the municipality of which the supervising policymaker must have been aware."  Hurd v. D.C., 997 F.3d 332, 337 (D.C. Cir. 2021) (cleaned up).  Green claims that the unconstitutional prohibition on filming, enforced by the SPOs at the DHS office, meets this standard.  See Opp'n at 9.

This argument fails for two reasons.  First, Green has not plausibly pled that the SPOs acted as employees or agents of D.C. in enforcing the alleged no-recording policy.  See Johnson v. Conner, 453 F. App'x 719, 720 (9th Cir. 2011) (unpublished) (municipalities are not liable under Monell for the conduct of individuals who are not their employees or agents).  As discussed above, his allegation that the chief is "responsible" for SPOs is a legal conclusion that does "not suffice."  Iqbal, 556 U.S. at 678.  Moreover, SPOs are neither employees of D.C., see D.C. CODE § 5-129.02(a), "no[r] as a matter of law agents of" D.C., Moorehead, 747 A.2d at 143.  Second, Green offers no facts to support the inference that the Chief of Police, or other MPD policymakers, "must have been aware" of the alleged no-recording policy.  To the contrary, the complaint describes that Green was released from handcuffs once MPD officers arrived at the DHS office and, the following day, the officers told the SPOs that the alleged no-

---

record").  To be clear, the Court does not at this point endorse any conclusion about the alleged no-recording policy's constitutionality or decide whether it constituted a policy.

recording policy violated Green's rights.  SAC ¶¶ 37, 41.  Green has thus also failed to state a claim against the Chief of Police.

## IV.  Conclusion

For these reasons, it is hereby

**ORDERED** that [25] Defendant Chief of Police Pamela Smith's Motion to Dismiss is **GRANTED**.

SO ORDERED.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  November 28, 2023