UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETER GREEN**, <br><br> Plaintiff, <br><br> v. <br><br> **SECURITY ASSURANCE MANAGEMENT, et al.,** <br><br> Defendants. | Case No. 22-cv-01936 (CRC) |

**MEMORANDUM OPINION AND ORDER**

Peter Green walked into a D.C. Department of Human Services ("DHS") office in June 2022 seeking government benefits. Fearing potential miscommunications with DHS staff, he started recording his interactions with them on his phone. But when Green hit "record," he set off a chain of events that led to his arrest, handcuffing, and the alleged deletion of his video footage. Green sued the special police officers who arrested him and their employer, who now seek summary judgment. The Court will grant Defendants' motion as to Green's arrest but will deny it as to the alleged search of his phone. The Court will also dismiss several claims that Green has abandoned and deny Defendants' motion for attorneys' fees and costs.

**I. Background**

A. Factual Background

The Court draws the following background from the allegations in the Complaint and the parties' statements of undisputed facts. Where the facts are in dispute, the Court construes them in favor of the non-moving party, Green.

DHS provides economic assistance and support services to D.C. residents. In 2022, Green visited a DHS service center to apply for Medicaid and supplemental assistance program

benefits.  Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts, ECF No. 38-1, ¶ 2; Second Am. Compl. ("SAC") ¶ 15.  While there, Green became concerned that miscommunications with DHS staff might delay his benefits.  SAC ¶ 16.  Green thus decided to memorialize his interactions with DHS staff by recording them on his cellphone.  Id.; Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 9.

Before Green started recording, he approached a group of special police officers ("SPOs") employed by Security Assurance Management ("SAM").  Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶¶ 3, 9.  SPOs are private police officers appointed by the mayor and employed by private companies, with full authority to make arrests on their assigned premises.  See D.C. Code §§ 5-129.02(a), 23-582(a).  Green informed the SPOs that he was going to record his interactions with DHS staff.  Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 9.  SPO Donkelar Butler warned Green that recording in the DHS office was prohibited and another SPO pointed to a large poster that read: "Cell-Phones—Text/Reading Only No Photographs or Video Recordings."  Id. ¶¶ 7, 9.  Nonetheless, when Green was called to the service window, he pressed record.  Id. ¶ 9.

A few minutes after Green started recording, a DHS representative approached him.  Id.; SAC ¶¶ 17–19.  The representative advised Green that recording in the service center was verboten, directed Green to the poster outlining the prohibition, and informed Green that he would need to leave if he did not stop recording.  See Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 9.  Green responded that it was his First Amendment right to record interactions with public officials, so long as he was not disruptive or filming in private spaces.  Id.  Disregarding the representative's warnings, Green continued filming.  Id.

Soon after, a DHS supervisor called for security and instructed Green to leave. Id. Green completed his benefits application and stopped recording before the SPOs reiterated that he needed to exit the premises. Id. ¶ 10; see SAC ¶ 25. At that point, Green asked to speak with a supervisor. Defs.' Ex. 2 ("Green Depo."), ECF No. 35-4, at 71:5–8, 11–14. When Green failed to comply with the SPOs' instructions, Officer Butler placed him in handcuffs until Washington Metropolitan Police Department officers arrived to escort him out of the building. See Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 10.

Green testified in his deposition that while he was in handcuffs and his back was turned to Officer Butler, he heard Butler say to the other SPOs, "Hey, get his phone." Green Depo. at 73:2–5. At that point, Green's cellphone was in his back pocket. Id. at 73:4–5. Green claims that one of the SPOs removed his cellphone—which was not password protected—from his back pocket and deleted the video of his interactions with DHS staff. See SAC ¶¶ 33–35; Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 11. While Green is unaware which particular SPO searched his phone, he maintains that a video had existed but was no longer accessible once he was released from handcuffs. Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 11.

B. Procedural History

Following his arrest, Green sued the eight individual SPOs involved in his arrest and their employer SAM, alleging violations of his First and Fourth Amendment rights and a common-law claim for false arrest. See Compl.; First Am. Compl. He then amended his Complaint to add MPD's then-interim Chief of Police as a defendant. SAC ¶ 12. The Chief moved to dismiss on the grounds that Green lacked standing to sue him and failed to allege facts to establish municipal liability. Mot. Dismiss at 2. The Court granted that motion. See Mem. Op. & Order, ECF No. 32.

Following discovery, the remaining Defendants moved for summary judgment. Green then voluntarily withdrew his First Amendment claims and his claims against individual officers other than Officer Butler. Opp'n at 1 n.1. Two counts thus remain: (1) Green's Fourth Amendment claims under 42 U.S.C. § 1983 against Officer Butler for unreasonable search and seizure, and (2) his common-law false arrest claim against Officer Butler and SAM.

Defendants also moved under 42 U.S.C. § 1988 for attorneys' fees and costs associated with their defense of Green's abandoned claims, which they insist "were improperly maintained." Mot. Att'y Fees at 1.

## II. Legal Standards

### A. Summary Judgment

To prevail on a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it can affect the outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

In considering a motion for summary judgment, the Court must resolve all factual disputes and draw "all justifiable inferences" in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; see also Mastro v. Pepco, 447 F.3d 843, 850 (D.C. Cir. 2006). But the non-moving party's opposition must consist of more than mere allegations or denials; instead, it must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts

showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "[T]he moving party is entitled to judgment as a matter of law if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial.'"  Eddington v. Dep't of Def., 35 F.4th 833, 836–37 (D.C. Cir. 2022).

 B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  The "clearly established" prong of qualified immunity "means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful."  District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (citation omitted).  While this prong does "not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate."  Mullenix, 577 U.S. at 12 (citation omitted).

**III.  Analysis**

For the reasons stated below, the Court will grant Defendants' motion for summary judgment on Green's Fourth Amendment and common-law false arrest claims and deny summary judgment on Green's Fourth Amendment search claim.  The Court will also dismiss Green's abandoned claims and deny Defendants' request for attorneys' fees and costs.

 A. Fourth Amendment Unlawful Arrest and Common-Law False Arrest Claims

The Court will first address Green's claims that his arrest violated the Fourth Amendment and D.C. common law.  Because Green has not shown that the arrest violated clearly established

5

law and the record and undisputed facts show that Officer Butler had probable cause to arrest Green, the Court will grant summary judgment in favor of Defendants on these claims.[1]

    *1.  Fourth Amendment Unlawful Arrest Claim*

        a.  <u>Qualified Immunity</u>

First, Officer Butler is entitled to qualified immunity as to Green's Fourth Amendment unlawful arrest claim. As the plaintiff, Green must identify a clearly established legal principle that, with "a high degree of specificity," "clearly prohibit[s] [Officer Butler's] conduct in the particular circumstances before" her. <u>Wesby</u>, 583 U.S. at 63 (quotation marks and citation omitted).

Green has not identified a single case that holds that an officer may not arrest someone under circumstances similar to those here. In fact, the only case that either party cites with similar facts supports Defendants, not Green. In <u>Kotsch v. District of Columbia</u>, 924 A.2d 1040 (D.C. 2007), private security officers detained a plaintiff for trespass after he refused to leave a restaurant when ordered. <u>Id.</u> at 1042, 1045. The plaintiff then requested to speak with a supervisor and did not leave the restaurant. <u>Id.</u> at 1042. The court held that the officers lawfully arrested the plaintiff for trespass. <u>Id.</u> at 1045.

This case closely resembles <u>Kotsch</u>. Like the plaintiff in <u>Kotsch</u>, Green was instructed by security officers to leave the premises, but instead of leaving, he too asked to speak with a supervisor and did not leave. Def.s' Ex. 1 ("Green Resp. to SAM's Interrog."), ECF No. 35-3,

---

[1] As a preliminary matter, it is not entirely clear whether SPOs, who are employed by private entities, can assert qualified immunity as a defense to § 1983 claims. <u>Cf.</u> <u>Wheeler v. Am. Univ.</u>, 619 F. Supp. 3d 1, 23 (D.D.C. 2022) (Cooper, J.) (noting that there is no clear D.C. Circuit precedent addressing whether private university-employed SPOs can assert qualified immunity). However, Green does not dispute whether Officer Butler is entitled to raise qualified immunity. Thus, for the purposes of this motion, the Court will assume qualified immunity is applicable here.

6

¶ 7. Given the overlap between this case and <u>Kotsch</u> and Green's failure to identify any case law reaching the opposite conclusion, Green has not shown that Officer Butler was violating clearly established law when she arrested Green. Officer Butler is therefore entitled to qualified immunity as to Green's Fourth Amendment unlawful arrest claim.

### b. <u>Probable Cause</u>

In any event, Green's arrest was lawful. A warrantless arrest is permissible under the Fourth Amendment if it is supported by probable cause. <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003). Probable cause is an objective standard that exists if, under the totality of the circumstances, a reasonable person would have concluded that there was a probability that a suspect committed a crime. <u>See, e.g., id.</u>; <u>Beck v. Ohio</u>, 379 U.S. 89, 96 (1964); <u>see also</u> <u>Kaley v. United States</u>, 571 U.S. 320, 134 (2014) (noting probable cause is not a "high bar").

Here, the SPOs had probable cause to believe that Green was trespassing. D.C. Code § 22-3302(b) prohibits trespassing and makes it unlawful to "refuse to quit the [public property] . . . on the demand of the . . . person lawfully in charge," even if the individual entered the property lawfully. <u>Id.</u> The essential elements of the offense are: (1) the individual was present on the property, (2) the individual was directed to leave the property by the lawful occupant or person lawfully in charge of the property, (3) at the time the individual was directed to leave the property, the individual was without lawful authority to remain there, and (4) that upon being directed to leave the property, the individual refused to leave. <u>See</u> <u>D.C. v. Murphy</u>, 631 A.2d 34, 37 n.6 (D.C. 1993).

Green does not dispute that he was on DHS property or that he was asked to leave by authorized personnel. See SAC ¶ 15 ("Green visited the [DHS]."); Green Resp. to SAM's Interrog. ¶ 7 ("SPOs employed by Defendant told him that recording was prohibited in the DHS

7

office, and that he had to leave immediately[.]"). Further, the record shows that after being directed to leave the DHS service center, Green demurred. When asked at his deposition whether he refused to comply with instructions to leave, Green stated, "I asked for a supervisor at that point in time." Green Depo at 71:5–8, 11–14. Based on these undisputed facts alone, Officer Butler had probable cause to arrest Green for trespass because Green was on public property without lawful authority and did not leave when directed to do so. See D.C. Code § 22-3302(b).

Green's counterarguments miss the mark. He first contends that a factual dispute remains over Officer Butler's reason for arresting him. Opp'n at 2–4. In particular, Green asserts that Officer Butler's "testimony is at odds with Defendants' claim that [Officer Butler] arrested Green for trespassing, *not* for recording his interactions with a DHS official." Id. at 4 (emphasis in original). Green picks out portions of Officer Butler's deposition transcript in an effort to establish that Officer Butler subjectively believed she was arresting Green for recording his interactions with DHS staff. See id. at 3–5. Put simply, Green is asking the Court to examine the subjective beliefs of Officer Butler—at the time of the arrest—to determine whether probable cause existed. But this argument fails as a matter of law.

In Devenpeck v. Alford, 543 U.S. 146 (2004), the Supreme Court held that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. at 153 (citing Whren v. United States, 517 U.S. 806, 812–13 (1996)). So, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. Instead, to determine if probable cause exists, a court looks to whether, based on all "the events leading up to the arrest," a reasonable officer in the same position would have had probable cause to make an arrest. Pringle, 540 U.S. at 371.

The test is purely objective, focused solely on the facts surrounding the arrest, not the subjective beliefs of the officer. See id.; Devenpeck, 543 U.S. at 152–53.

As a result, any factual dispute over Officer Butler's subjective "reason" for arresting Green, Opp'n at 5, is constitutionally irrelevant to Green's Fourth Amendment claim. It does not matter whether Officer Butler thought she was arresting Green for "disruptive behavior" or "violating the DHS office's prohibition against video recording." Id. Probable cause is based on an objective standard, and for the reasons discussed above, it was met here.

Green also quibbles with minor factual details, but these arguments fall flat too. Green disputes the number of times he was asked to leave the DHS service center, denies he refused to leave when directed, and claims he was detained while trying to exit the center. Opp'n at 5; Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶¶ 1, 10.

First, how many times Green was asked to leave is irrelevant. Under D.C. Code § 22-3302(b), all that is required is an individual was directed to leave by someone with lawful authority, and that individual refused to do so. Whether Green was asked twice or thrice does not change that he was, in fact, directed to leave. See Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 1 (explaining that Green was told multiple times to leave the premises).

Second, the record contradicts Green's contention that he did not refuse to leave the premises. See Opp'n at 5. Green stated that when the SPOs told him "he had to leave immediately," he replied "that he was within his rights and asked to speak with the SPO's supervisor." Green Resp. to SAM's Interrog. ¶ 7. Green's deposition transcript reiterates that point. When asked whether he refused to comply with requests to leave, Green stated, "I asked for a supervisor at that point in time." Green Depo at 71:5–8, 11–14. Asking to speak with a supervisor is not leaving the property.

9

Third, the record also contradicts Green's assertion that he was attempting to leave when he was arrested. See Opp'n at 4–5. Green claims he was going down the stairs and complying with instructions to leave when he was detained. Id. In support of this narrative, Green relies on SPO Ionia Butler's deposition testimony, where she noted that before Green was detained, he started walking down the stairwell to exit the facility. Pl.'s Ex. 3 ("Ionia Butler Depo."), ECF No. 38-5, at 75:11–12, 81:13–16. But Green omitted the remainder of Ionia Butler's testimony, in which she clarified that, while walking down the stairs, Green "stopped and said he's not leaving and he won't leave." Id. at 77:16–17. Butler's full testimony thus directly contradicts Green's version of events. As a result, he has not established any genuine dispute of material fact as to what happened. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Green "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). He has not done so, let alone demonstrated that Defendants violated clearly established law. Accordingly, the Court grants Defendants summary judgment as to Green's Fourth Amendment unlawful arrest claim.

  2. *Common-Law False Arrest Claim*

Green also challenges his arrest under D.C. common law. SAC ¶¶ 60-61. The relevant facts at issue are the same as above. But rather than applying the Constitution, the Court looks to the laws of the District of Columbia.

"In the District of Columbia, false arrest 'is defined as the unlawful detention of a person without a warrant or for any length of time whereby he is deprived of his personal liberty or

10

freedom of locomotion; it may be caused by actual force, or by fear of force, or even by words.'" Hunter v. District of Columbia, 824 F. Supp. 2d 125, 137 (D.D.C. 2011) (quoting Tocker v. Great Atl. & Pac. Tea Co., 190 A.2d 822, 824 (D.C. 1963)). Probable cause to arrest is a defense to false arrest. DeWitt v. District of Columbia, 43 A.3d 291, 295 (D.C. 2012).

For the reasons stated above, Officer Donkelar Butler had probable cause to arrest Green. Officer Butler and SAM are therefore entitled to summary judgment on this count as well. See Bradshaw v. District of Columbia, 43 A.3d 318, 323 (D.C. 2012) ("A police officer may justify an arrest [and defeat a wrongful arrest claim brought under §1983 and a common-law false arrest claim] by showing that he or she had probable cause, in the constitutional sense, to make the arrest.").

B. Fourth Amendment Unreasonable Search

The Court turns next to Green's Fourth Amendment claim against Officer Butler as to the alleged search of his cellphone. SAC ¶ 54. Because there remains a genuine issue of material fact on this claim, the Court will deny summary judgment.

Green alleges that the SPOs, at Officer Butler's direction, searched his phone and deleted a video upon his arrest. Id.; see Opp'n at 7. Defendants cite no case law that would allow the officers to do either of those things. For good reason. Riley v. California, 573 U.S. 373 (2014), held that warrantless searches of cellphones seized incident to arrest violate the Fourth Amendment. Id. at 401. It is therefore clearly established that police may not search an individual's cellphone incident to arrest, let alone delete a video. While Riley did note that "other case-specific exceptions may still justify a warrantless search of a particular phone," id. at 401–02, Officer Butler raises none.

11

Whether Officer Butler violated clearly established law therefore turns on a question of fact: Was Green's phone actually searched? There remains a genuine dispute as to that question. On the one hand, Green maintains that there is "significant uncertainty about the circumstances of the video's deletion." Opp'n at 6. He stated at his deposition that he heard Officer Butler say during his arrest "Hey, get his phone!" Green Depo. at 73:2–5. Following that interaction, Green claims the officers "grabbed [his cellphone] out of [his] back pocket." Id. at 73:5–6. On the other hand, Defendants point to the depositions of Officers Donkelar Butler, Ionia Butler, and Britani Wilkins, all of whom testified that neither Officer Donkelar Butler nor any of the other SPOs searched Green's phone. See Mot. Summ. J. at 4; Def.s' Ex. 5 ("Donkelar Butler Depo."), ECF No. 35-7, at 90:10–12 (Q: "Did you at any point touch Green's phone?" A: "No."); Ionia Butler Depo. at 97:3–5 (Q: "Did you observe any of your SPO colleagues at any point touching [Green's] phone?" A: "No."); Def.s' Ex. 2 ("Britani Wilkins Depo."), ECF No. 39-1, at 38:7–10 (Q: "Did you observe any of your fellow SPOs touching Mr. Green's phone at any point?" A: "No.").

These arguments boil down to a clash of deposition transcripts. The Court cannot resolve that clash because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

Importantly, Officer Butler could be liable under § 1983 even if she did not personally search Green's phone. Liability may attach if Officer Butler "made the decision to initiate [the] search," Fernandors v. D.C., 382 F. Supp. 2d 63, 73 (D.D.C. 2005), as Green alleges she did by

12

saying, "Hey, get his phone!" during his arrest, Green Depo. at 73:2–5.  Additionally, Officer Butler could be liable on a bystander-liability theory if she knew a fellow officer was violating Green's constitutional rights, had a reasonable opportunity to intervene, and chose not to act.  E.g., Fernandors, 382 F. Supp. 2d at 72; (citing Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002)).  Officer Butler's alleged statement and leadership role in the arrest therefore creates a genuine dispute of material fact even if she did not personally search the phone.  See also Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ¶ 10. (noting that Officer Butler was the supervising SPO on the premises.).[2]

Officer Butler also argues that it is unclear whether the video was saved, whether Green's phone had enough storage available for the video to save automatically, or whether Green inadvertently deleted the video.  Reply at 4.  Maybe so, but she offers no record evidence supporting any of these theories, and the Court cannot engage in speculation.  See Adickes, 398 U.S. at 157 ("[T]he moving party" has "the burden of showing the absence of a genuine issue as to any material fact[.]"); see also Tolan v. Cotton, 572 U.S. 650, 656 (2014) ("[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (quoting Anderson, 477 U.S. at 249)).

---

[2] Other courts have also recognized that officers may be liable under § 1983 even if they did not personally conduct a search.  For instance, the Fifth Circuit has held that officers could still be considered participants in the search, rather than mere bystanders, if their activity was "integral to the search."  James v. T.G. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989)).  Similarly, the Tenth Circuit has found an officer may be liable if a plaintiff can show that an "affirmative link exists between the [constitutional] deprivation and either the [officer's] personal participation, his exercise of control or direction, or his failure to supervise."  Poolaw v. Marcantel, 565 F.3d 721, 732 (10th Cir. 2009) (alterations in original) (quoting Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Given these disputes, the record does not establish one way or the other whether Green's phone was searched or whether a video was deleted. While Butler and the other SPOs insist that they did not search or delete a video from Green's phone, Green's deposition testimony is enough to raise a genuine dispute of material fact. The conflicting deposition testimony thus precludes the Court from resolving this issue on summary judgment.

### C. Abandoned Claims

The Court will dismiss Green's abandoned claims. Following Defendants' motion for summary judgment, Green voluntarily withdrew the following claims: (1) § 1983 claims against SAM; (2) claims against SPOs Britani Wilkins, Benedette Ezimorah, Jaymar Payne, Ionia Butler, Carol Chase-Judge, and Lindsay Vernon; and (3) a § 1983 claim for a First Amendment violation against Officer Butler. Opp'n at 1 n.1. Accordingly, since these claims were voluntarily withdrawn, they are hereby dismissed. See Barrett v. Chreky, 634 F. Supp. 2d 33, 39 (D.D.C. 2009) (dismissing plaintiff's voluntarily withdrawn claims at summary judgment).

### D. Attorneys' Fees

Lastly, the Court denies Defendants' motion for attorneys' fees and costs. Defendants seek costs pursuant to 42 U.S.C. § 1988(b) following Green's withdrawal of several claims.

Before Green withdrew his First Amendment claims, Defendants requested voluntary dismissal. Green declined, causing Defendants to brief those issues at summary judgment. Defendants contend that Green's decision to maintain these claims despite their ultimate withdrawal after summary judgment warrants an award of attorneys' fees and costs. Mot. Att'y Fees at 1–2.

42 U.S.C. § 1988(b) provides that "in any action or proceeding to enforce a provision of . . . [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other

14

than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has held that a prevailing defendant may recover attorneys' fees under § 1988 if the plaintiff's action is "frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." Hughes v. Rowe, 449 U.S. 5, 15 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)).

The Court declines to award Defendants attorneys' fees and costs for Green's First Amendment claims. Green's decision to pursue these claims does not rise to the level of the improper conduct that § 1988 seeks to deter. Green's counsel has set forth reasonable grounds for pursuing the First Amendment claims and has articulated a reasonable basis for abandoning those claims when he did. See Opp'n Att'y Fees at 5–7. Defendants also have not shown that Green's claims were frivolous, unreasonable, or without foundation. Hughes, 449 U.S. at 15.

IV. **Conclusion**

For these reasons, it is hereby

**ORDERED** that [35] Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  It is further

**ORDERED** that Count 1 of the Second Amended Complaint is DISMISSED as to all defendants.  It is further

**ORDERED** that Count 2 of the Second Amended Complaint is DISMISSED as to Defendant Security Assurance Management and all individual defendants other than Officer Donkelar Butler.  It is further

**ORDERED** that Count 3 of the Second Amended Complaint is DISMISSED as to all individual defendants other than Officer Donkelar Butler.  It is further

**ORDERED** that [40] Defendants' Motion for Sanctions is DENIED.  It is further

**ORDERED** that the parties file a joint status report by January 10, 2025 discussing the need for further proceedings in this case.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: December 11, 2024